# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

WRIGHT TRANSPORTATION, INC.,
an Alabama corporation,

        *Plaintiff,*

    v.

PILOT CORPORATION; PILOT TRAVEL
CENTERS LLC, d/b/a PILOT FLYING J;
JAMES A. HASLAM; JOHN FREEMAN;
BRIAN MOSHER and MARK HAZELWOOD,

        *Defendants.*

Case No. 1:13-cv-00352

The Honorable William H. Steele

## OPPOSITION OF DEFENDANTS PILOT CORPORATION AND PILOT TRAVEL CENTERS LLC TO PLAINTIFF'S MOTION TO DISMISS AND FOR SANCTIONS

Defendants Pilot Corporation and Pilot Travel Centers LLC (collectively, "Pilot"), along with individual defendants James A. Haslam III, John Freeman, and Brian Mosher (together with Pilot, "Defendants"), by and through their undersigned counsel, hereby respond to and oppose Plaintiff's Motion to Dismiss and Motion for Sanctions[1] (the "Motion").

## PRELIMINARY STATEMENT

Plaintiff initiated this lawsuit in federal court based on federal question jurisdiction under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. and federal diversity jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"). Plaintiff vigorously litigated its case, including before this Court and the federal MDL court. Now, more than two years after filing and actively litigating its complaint in federal

---

[1] Plaintiff's request for sanctions is not directed at any of the individual defendants, though they join in the opposition.

court, Plaintiff asserts that federal jurisdiction is improper and seeks to have its claims dismissed so it can restart this litigation in state court.  Plaintiff already made these same arguments to the MDL court, which declined to dismiss this lawsuit and remanded the case to this Court for further proceedings.  Plaintiff's arguments are without merit.

First, this court has, and was never divested of, CAFA jurisdiction.  Federal courts retain CAFA jurisdiction even if a class is never certified or class claims are dismissed, and subsequent events do not alter the initial jurisdictional basis.  See infra at 4-6.

Second, this Court (and the MDL court) properly exercised supplemental jurisdiction over Plaintiff's state law claims after the dismissal of Plaintiff's RICO claims.  See infra at 6-8.

Third, there is no basis to dismiss this case without prejudice where such dismissal at this late stage would prejudice Defendants who have invested considerable time and resources defending against Plaintiff's claims.  See infra at 8-10.

Fourth, Plaintiff's request for sanctions is frivolous and devoid of any supporting evidence.  Pilot never "hid" anything regarding the citizenship of its members.  Nor has Plaintiff suffered any prejudice, particularly where federal jurisdiction over Plaintiff's claims is rooted in CAFA and not dependent on diversity jurisdiction.  See infra at 10-13.

## BACKGROUND

Plaintiff filed its complaint in this Court on July 10, 2013, asserting a nationwide class action based on claims under RICO, breach of contract, deceptive trade practices, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, and suppression.  Plaintiff alleged that jurisdiction was appropriate under 28 U.S.C. § 1332 pursuant to both CAFA and the complete diversity of the parties.  [Dkt. 1 at ¶ 31]  Plaintiff also alleged federal question jurisdiction under RICO.  [Id.]

On January 9, 2014, the Court dismissed Plaintiff's RICO claims against Pilot, as well as the claims for deceptive trade practices, fraudulent misrepresentation, negligent misrepresentation, suppression, and unjust enrichment. [Dkt. 68] This Court also dismissed Plaintiff's claims brought on behalf of any purported class. Plaintiff's motion for leave to amend its Complaint was subsequently denied by Judge Thapar on the grounds that Wright's attempt to amend its complaint over two years after filing was the product of undue delay and would result in prejudice to Defendants. See [MDL 2515, Dkt. 228] Consequently, Wright has only a claim for breach of contract against Pilot, and an unjust enrichment claim against Pilot Corporation and certain individual defendants remaining.

Defendants answered the remaining allegations in the Complaint on January 31, 2014,[2] and the parties had exchanged written discovery by the time that this case was transferred and consolidated, on April 7, 2014, to the multidistrict litigation In re: Pilot Flying J Rebate Litigation II, MDL 2515, in the Eastern District of Kentucky (the "MDL").

In the MDL, the court ruled on motions to dismiss as to other plaintiffs and then the parties engaged in extensive discovery. Plaintiff served Pilot with 127 document requests, 40 interrogatories, and 45 requests for admission. In total, Plaintiff served all Defendants with approximately 162 document requests, 59 interrogatories and 137 requests for admission. In response to the voluminous discovery requests, Pilot produced more than 27 gigabytes of data to Plaintiff. Additionally, Plaintiff, with three other plaintiffs, took two Rule 30(b)(6) depositions of Pilot, as well as five additional depositions of current or former Pilot employees. Pilot deposed Plaintiff's two principal witnesses, Patrick Wright and Daniel Wright. Expert discovery

---

[2] Mr. Mosher did not file an answer until February 7, 2014.

3

is nearly concluded.  Both Plaintiff and Pilot served expert reports, and the parties were in the process of scheduling the expert depositions at the time this lawsuit was remanded to this Court.

Discovery was scheduled to be completed by August 14, 2015 (the Court denied the plaintiffs' request to extend this deadline).  In July, however, Pilot learned that one of its sub-members had a sub-sub member who was a resident of Ohio, which resulted in the dismissal of two of the MDL plaintiffs for lack of jurisdiction.  The MDL court also dismissed another MDL member case for jurisdictional defects, which Pilot had raised in its answer to the complaint filed in March 2015.

After it appeared that it would be the last litigant in federal court, Plaintiff made a submission to the MDL court challenging the court's jurisdiction.  [MDL 2515, Dkt. 284]  When Judge Thapar indicated CAFA jurisdiction still exists (THE COURT: "I think, candidly, under CAFA, the jurisdiction exists"), Plaintiff changed course and requested that Judge Thapar remand the case to this Court to decide any jurisdictional question.  See [MDL 2515, Dkt. 293 at 12:14-25]  Judge Thapar ultimately declined to dismiss this case on jurisdictional grounds and instead suggested that the case be remanded to this Court.

## ARGUMENT

### I.        THIS COURT HAS CAFA JURISDICTION

Despite originally invoking CAFA jurisdiction in its complaint, Wright now argues that CAFA jurisdiction is improper.  See Mot at 5, 8.  It is well established, however, that denial of class certification does not divest federal courts of CAFA jurisdiction.  See Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268 n.12 (11th Cir. 2009); Stalley v. ADS Alliance Data Sys., Inc., No. 8:11-CV-1652, 2014 WL 348564, at *4 (M.D. Fla. Jan. 31, 2014); Lawson v. Life of the S. Ins. Co., 286 F.R.D. 689, 701 (M.D. Ga. 2012); see also Metz v. Unizan Bank, 649 F.3d 492,

Americas 90804539

500 (6th Cir. 2011); <u>Cunningham Charter Corp.</u> v. <u>Learjet, Inc.</u>, 592 F.3d 805, 806-07 (7th Cir. 2010).  It does not matter whether class action claims were dismissed or withdrawn, or whether certification was denied.

The Eleventh Circuit has directly addressed this very issue, making clear that CAFA jurisdiction remains even if the proposed class is never certified.  <u>See</u> <u>Vega</u>, 564 F.3d at 1280 n.12.  In <u>Vega</u>, the court determined that an ultimate failure to meet the class requirements of Federal Rule of Civil Procedure 23 would "not divest the federal courts of subject matter jurisdiction under the CAFA" and "post-removal events (including non-certification, de-certification or severance) do not deprive federal courts of subject matter jurisdiction."  <u>Id.</u>  Here, Plaintiff's complaint was originally filed under CAFA and, therefore, jurisdiction still exists.

The courts within this Circuit have followed <u>Vega</u> and found that CAFA jurisdiction remains despite the failure to certify a class.  <u>See</u>, <u>e.g.</u>, <u>Stalley</u>, 2014 WL 348564, at *4 ("[I]t is . . . apparent . . . the Eleventh Circuit is giving district courts the green light to retain CAFA jurisdiction even after denial of class certification"); <u>Lawson</u>, 286 F.R.D. at 701 (retaining jurisdiction because "the denial of certification for the proposed class does not oust the case from this Court").  Other circuit courts that have considered the issue have agreed with the holding in <u>Vega</u> and similarly concluded that post-filing events do not divest a court of CAFA jurisdiction. <u>See</u>, <u>e.g.</u>, <u>Metz</u>, 649 F.3d at 500 (concluding that "[i]f Congress meant to divest the district courts of [CAFA] jurisdiction following denial of class certification, it could have said so explicitly"); <u>Cunningham Charter Corp.</u>, 592 F.3d at 806-07 (holding that federal jurisdiction under CAFA does not depend on certification and expressly agreeing with the decision in <u>Vega</u>).

The reasoning behind this holding is clear.  Jurisdiction is established at the time a case is filed, and subsequent events cannot divest a court of jurisdiction if it existed at the time the

complaint was filed.  Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 571 (2004) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action brought . . . whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal.") (internal quotation marks omitted); Lozman v. City of Riviera Beach, Fla., 713 F.3d 1066, 1073-74 (11th Cir. 2013) (federal jurisdiction is determined at the time the complaint is filed and subsequent events do not divest the court of jurisdiction).

Plaintiff's reliance on the unpublished opinion in Walewski v. Zenimax Media, Inc., 502 F. App'x 857 (11th Cir. 2012) does nothing to support its argument.  Walewski did not involve CAFA at all, nor does it address, let alone overrule, the Eleventh Circuit's decision in Vega. Plaintiff's reference to Karhu v. Vital Pharmaceuticals, Inc., No. 13-60768-CIV, 2014 WL 1274119 (S.D. Fla. Mar. 27, 2014) is similarly unavailing.  Karhu is a Florida district court decision that is not controlling, and in any event the Karhu court incorrectly dismissed Vega's holding regarding CAFA jurisdiction as "dicta."  Id. at *3.[3]  Thus, during oral argument in the MDL, Judge Thapar indicated that the Eleventh Circuit's decision in Vega was in accord with the Sixth and Seventh Circuits regarding the continued CAFA jurisdiction here and stated "I think, candidly, under CAFA, the jurisdiction exists."  See [MDL 2515 Dkt. 293, July 22, 2015 Hr'g Tr. at 12:34-25, 13:15-18]

## II.   THIS COURT HAS SUPPLEMENTAL JURISDICTION

This Court has also properly exercised supplemental jurisdiction over Plaintiff's state law claims.  In Smith v. Housing Authority of City of Prichard, No. 05-0519, 2007 WL 735553, at *3 (S.D. Ala. Mar. 6, 2007), this Court discussed several factors that weigh in favor of maintaining

---

[3] Similarly, neither In re Motions to Certify Classes Against Ct. Reporting Firms for Charges Relating to Word Indices, 715 F. Supp. 2d 1265, 1284-85 (S.D. Fla. 2010), nor DWFII Corp. v. State Farm Mutual Auto Insurance Co., 271 F.R.D. 676, 688 (S.D. Fla. 2010), address or analyze the question of CAFA jurisdiction under Vega.  Here too, there is no doubt that jurisdiction existed when Plaintiffs asserted its CAFA claims and this Court still maintains federal CAFA jurisdiction over this action.  28 U.S.C. § 1332(d).

6

supplemental jurisdiction over state law claims after the dismissal of federal claims, including where "(a) the[] state-law issues have been extensively litigated and briefed in this forum, (b) the questions of Alabama law implicated by [the plaintiff's state law claims] are straightforward, blackletter and well-settled, (c) the parties would incur needless expense and delay in litigating this matter if [the plaintiff's state law claims] were remanded to state court, and (d) the state court would be placed in the awkward position of being thrust at a dispositive juncture into a matter as to which it has had no involvement for nearly 18 months." Id.; Linn v. ST Mobile Aerospace Eng'g Inc., No. 07-0377, 2008 WL 2945558, at *7 (S.D. Ala. July 25, 2008) (Steele, J.) (exercising supplemental jurisdiction where the "state-law issues have been extensively litigated and briefed in this forum"); see also Bus. Realty Inv. Co. v. Insituform Techs., Inc., 564 F. App'x 954, 957 (11th Cir. 2014) (affirming district court's exercise of supplemental jurisdiction over state-law claims that were pending in federal court for over 4 years). This Court maintained the case after dismissal of the federal RICO claims, as did the MDL court.

These factors all weigh in favor of continuing to exercise supplemental jurisdiction here. This case has been pending in the federal courts for over two years. Wright's only remaining claim against Pilot is for breach of contract, and its only remaining claim against Pilot Corporation and the individual defendants is for unjust enrichment – claims that are "straightforward, black-letter and well-settled." Smith 2007 WL 735553, at *3. This Court also has familiarity with this matter, having ruled on motions to dismiss and certain discovery issues. Moreover, there has already been extensive discovery and the parties are on the eve of summary judgment briefing. See supra at 3-4. Plaintiff has also continued to actively litigate this matter for the past eighteen months in federal court without complaint.

Plaintiff cites to several cases where courts *simultaneously* dismissed a plaintiff's state law claims at the same time as dismissing all the federal claims.  See Bowens v. City of Atmore, 171 F. Supp. 2d 1244, 1260 (S.D. Ala. 2001) (granting defendant's motion for summary judgment and dismissing remaining state law claims); Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999) (same); Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352-53 (11th Cir. 1997) (same); Reynolds v. Golden Corral Corp., 106 F. Supp. 2d 1243, 1255 (M.D. Ala. 1999) (same).[4]  These cases are inapposite.  Here, the Court retained supplemental jurisdiction after it dismissed Plaintiff's federal claims, and the case has proceeded for eighteen months.  In such circumstances, it was and continues to be proper for this Court to retain supplemental jurisdiction over Plaintiff's remaining claims.

III.   **THERE IS NO BASIS TO DISMISS THE CASE WITHOUT PREJUDICE AT THIS LATE JUNCTURE**

Because federal jurisdiction exists under CAFA, the Court need not reach the question of whether prejudice to Defendants precludes dismissal at such a late stage of the case; however, that prejudice provides a separate and independent ground for denial of Plaintiff's Motion. Pursuant to Rule 41 of the Federal Rules of Civil Procedure, Plaintiff may seek to dismiss this action only by leave of court, and there is no basis for such a dismissal where, as here, Defendants would suffer significant prejudice.[5]  Under Rule 41(a)(2), the relevant factors for

---

[4] Plaintiff also cites to several cases for the unremarkable proposition that the district court has discretion whether to exercise supplemental jurisdiction where it has dismissed federal claims.  See, e.g., Mot. at 10; Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004); Weaver v. James Bonding Co., Inc., 442 F.Supp.2d 1219, 1229 (S.D. Ala. 2006); Brewer v. Daphne, 111 F. Supp. 2d 1299, 1320 (S.D. Ala. 1999).  Plaintiff fails to discuss the factors that courts consider when deciding whether to exercise that discretion.  As noted above, those factors all weigh in favor of retaining jurisdiction.

[5] Pursuant to Fed. R. Civ. P. 41(a)(1), Plaintiff could have voluntarily dismissed this action after this Court ruled on the motion to dismiss and prior to Defendant's answering the complaint.  Fed. R. Civ. P. 41(a)(1); see also Gillian v. Ponteaia, No. 1:06-CV-57, 2007 WL 2479466, at *1 (M.D. Ga. Aug. 28, 2007).  Wright did not elect to seek dismissal under Rule 41(a)(1) at that time and instead opted to vigorously litigate its state law claims in this Court and in the MDL.

Americas 90804539

considering prejudice include the length of time and amount of resources spent by the defendant litigating the case and any dilatory tactics by the plaintiff. [6] <u>Perkins</u> v. <u>Daniels</u>, No. 14-00077, 2014 WL 4322389, at *3, n.6 (S.D. Ala. Aug. 29, 2014); <u>Merrill Lynch Credit Corp.</u> v. <u>Lenz</u>, No. 09-60633, 2010 WL 2103016, at *2 (S.D. Fla. May 25, 2010) (denying dismissal where defendants would suffer prejudice as the case was pending for more than a year and numerous motions had been filed); <u>Yancey</u> v. <u>Clark Atlanta Univ.</u>, No. 1:09-CV-1101; 2010 WL 1265181, at *1 (N.D. Ga. Mar. 25, 2010) (denying dismissal where defendant had already incurred substantial costs preparing and responding to motions and conducting discovery).  Prejudice to the defendant is the paramount factor the court must consider in the context of any motion to dismiss under Rule 41(a)(2).  <u>See</u> <u>McCants</u> v. <u>Ford Motor Co., Inc.</u>, 781 F.2d 855, 856-57 (11th Cir. 1986).

Here, Plaintiff has not, and cannot, offer any legitimate explanation for forcing Defendants to litigate this case for two years in federal court, and then seeking to dismiss this action at this late juncture to start over in state court.  Wright filed its complaint in this Court over two years ago.  Defendants filed motions to dismiss, which this Court granted in part, dismissing all of Plaintiff's federal claims.  At that point, Plaintiff could have sought to dismiss its state law claims under Rule 41(a)(1) and refile in state court.  Instead, Plaintiff immediately propounded discovery, including document requests, interrogatories and multiple deposition notices.  Shortly thereafter, this case was transferred to the MDL, and Plaintiff continued to seek extensive discovery, including the deposition of multiple 30(b)(6) witnesses and several current and former Pilot employees.  The parties have exchanged tens of thousands of documents and

---

[6] Rule 41(a)(2) of the Federal Rules provides that the court may order a dismissal under "terms that the court considers proper."  Plaintiff does not even acknowledge Rule 41, much less establish a basis to dismiss this action under the rule.

9

have engaged in motions practice regarding various discovery disputes.  Both Pilot and Plaintiff issued expert reports, and expert depositions were about to be taken.  Discovery is almost complete, and the parties are on the eve of summary judgment.  During all this time, Plaintiff never once contested jurisdiction.  Given the history of this case and the significant amount of time and resources Pilot and the other defendants have invested to defend this lawsuit, a dismissal at this late stage would severely prejudice Pilot and the other defendants.[7]

## IV.      PLAINTIFF'S REQUEST FOR SANCTIONS IS FRIVOLOUS

Plaintiff requests that sanctions be imposed against Pilot for an alleged "fraud" perpetrated on this Court.  Plaintiff has not, and cannot, establish any basis for sanctions and Plaintiff's baseless accusations are frivolous and made without support.[8]  In order to impose sanctions, there must be a showing of bad faith, which is wholly lacking here.  See In re Mroz, 65 F.3d 1567, 1575-76 (11th Cir. 1995) (reversing district court's sanctions order where there was no showing of bad faith); Abbott Point of Care, Inc. v. Epocal, Inc., 908 F. Supp. 2d 1231, 1244 (N.D. Ala. 2012) (rejecting motion for sanctions where plaintiff did not establish bad faith).

First, Plaintiff contends that Pilot "hid[] and misrepresent[ed] the citizenship of its members in order to give the false appearance of diversity jurisdiction for purposes of MDL

---

[7] Even if there were a basis to dismiss under Rule 41(a)(2), appropriate conditions would need to be attached to any dismissal.  Specifically, where, as here, Defendants have expended considerable time and resources defending against a lawsuit, any dismissal should be conditioned on the requirement that Plaintiff pay Defendants' costs in defending the lawsuit should Plaintiff later refile.  See, e.g., Versa Prods., Inc. v. Home Depot, USA, Inc., 387 F.3d 1325, 1328 (11th Cir. 2004) (dismissal conditioned on requirement that plaintiff pay the fees and costs incurred in defending the matter in order to "protect [the defendant] from the unfairness of duplicative litigation"); Pontenberg v. Boston Scientific Corp., 252 F.3d 1253, 1260 (11th Cir. 2001) (district court properly attached the condition that should the plaintiff refile its claims "the court should award costs to [the defendant] pursuant to Rule 41(d)").

[8] "The filing of a motion for sanctions is itself subject to the requirements of [Rule 11]," and Plaintiff's wild and reckless accusations are themselves sanctionable.  Cochran v. Five Points Temporaries, LLC, No. 2:10-CV-3522-SLB, 2012 WL 4726285, at *15 (N.D. Ala. Sept. 27, 2012) (quoting Fed. R. Civ. P. 11 advisory committee's note); Bond v. Am. Med. Ass'n, 764 F. Supp. 122, 126 (N.D. Ill. 1991) ("The court reminds plaintiff's counsel that a frivolous motion for sanctions is, in itself, sanctionable."); see also All. to End Repression v. City of Chicago, 899 F.2d 582, 583-84 (7th Cir. 1990) (explaining that "[h]air-trigger motions for sanctions by lawyers . . . are themselves sanctionable" and holding the attorney seeking sanctions liable for his opponent's attorneys' fees in opposing the sanctions motion).

10

consolidation." Mot. at 2. This is false. Pilot never made any representation that it was diverse with Wright for purposes of diversity jurisdiction. Indeed, apart from a generic allegation that diversity existed, Plaintiff failed to include any allegations in the complaint about the citizenship of Pilot's members (which would have resulted a response by Pilot in the answer). Indeed, in both its answer and amended answer to a complaint by another MDL plaintiff, Pilot expressly denied the plaintiff's allegation that no member of Pilot was a citizen of Alabama, and also denied the allegation that diversity jurisdiction existed with an Alabama plaintiff, so Wright's counsel knew about the citizenship issue, assuming he was reviewing the pleadings of his co-plaintiffs with whom he was coordinating in a joint prosecution of claims. [MDL 2515, Dkts. 190, 230 at ¶ 2] Wright's jurisdictional allegations, however, were compound and conclusory. [Dkt. 78 ¶ 31] Plaintiff never once complained about Pilot's answer or expressed any confusion over Pilot's position, nor did it raise any concerns with this court or the MDL court until it became apparent that his co-plaintiffs were leaving federal court.

Second, the basis for federal jurisdiction over Plaintiff's claims has been rooted in CAFA and never required complete diversity of the parties. Plaintiff itself filed this suit in federal court pursuant to CAFA and RICO – two federal statutes giving rise to federal jurisdiction. [MDL 2515, Dkt. 274 at 6-8] This Court also retained supplemental jurisdiction over Wright's state law claims after its RICO claims were dismissed. [Id. at 8-10] Nor is there any basis for Plaintiff's speculation as to what Pilot "would be aware of" or conjecture regarding what Pilot "knew" about the supposed "routine of this Court and District." Mot. at 11. Pilot never had a reason to question the federal jurisdiction of this Court because of the existence of CAFA and supplemental jurisdiction.

11

     <u>Third</u>, Plaintiff's reckless allegation that Pilot "orchestrated a sham MDL" is similarly without merit.  Plaintiff appears to want to re-litigate the April 2014 transfer decision of the JPML.  Mot. at 1, n.3.  Wright cites <u>In re Royal Typewriter Co. (Royal Bond Copier) Breach of Warranty Litigation</u>, 435 F. Supp. 925 (J.P.M.L. 1977), but that case simply dealt with a denial of a transfer motion where there were vast differences in the facts at issue in the cases, and where the cases were in different stages of the proceedings.  Here, the JPML determined that consolidation was appropriate given the similarities in these lawsuits, which Plaintiff does not dispute.  The JPML also dismissed Plaintiff's argument that there were too few cases to justify consolidation.  <u>See</u> Transfer Order at 1, MDL 2515, Dkt. 60 ("We are not persuaded that there are too few cases for the litigation to benefit from centralization.").

     Nor is there anything inappropriate about Plaintiff simply being the last remaining federal litigant out of numerous plaintiffs that were in the MDL proceedings, and Plaintiff's effort to allege something nefarious about the MDL court's recent dismissal of three cases for lack of jurisdiction is similarly specious.  The MDL court recently dismissed two actions with Ohio plaintiffs after it was discovered that Pilot had a sub-sub-sub member who is also a citizen of Ohio.  <u>See</u> [MDL 2515, Dkt. 285][9]  After the dismissal of those lawsuits (along with another Alabama lawsuit that was predicated only on diversity, not CAFA or RICO, like here), the MDL

---

[9] Both lawsuits by the Ohio plaintiffs were initially filed in federal court.  As set forth in Pilot's recent submission to the MDL court, as part of its initial diligence in connection with answering those complaints, Pilot determined that, based upon the information available to it at that time, there were no members of Pilot Travel Centers LLC that were citizens of Ohio for purposes of diversity jurisdiction.  [MDL 2515, Dkt 274 at 12]  In early July of this year, one of Pilot's minority members, a non-party to this litigation, disclosed to Pilot for the first time that one of its sub-sub members was a citizen of Ohio for diversity purposes.  [<u>Id.</u>]  The Ohio citizen is not a member of Pilot.  Rather, the individual is a member of a Delaware limited liability company, which is in turn a member of a limited partnership, which is in turn a member of another Delaware limited liability company, which is in turn a member of Pilot.  [<u>Id.</u> at 6]; [MDL 2515, Dkt 274-1 at ¶ 6]  Upon learning this information, Pilot disclosed its Ohio members' citizenship to Judge Thapar, who dismissed the two lawsuits for lack of diversity jurisdiction.  [MDL 2515, Dkt. 283]

court remanded this action to this Court as the only remaining MDL case.[10]  Any issues

regarding the jurisdiction of those other cases are irrelevant to jurisdiction here, which is rooted

in CAFA and where supplemental jurisdiction exists.

Fourth, Plaintiff has not shown how litigating its case in the MDL, as opposed to a

different federal court, has caused any prejudice to it.  Curiously, despite Plaintiff's complaints

about the burden of litigating in the MDL, Pilot is only aware of three times that counsel for

Wright ever traveled to Kentucky, and one of those was a result of Plaintiff's own demand to

take a deposition there, while another was for oral argument on motions to dismiss involving

other plaintiffs' cases in which counsel for Wright did not participate (but nonetheless chose to

travel for).[11]  Otherwise, the MDL court permitted the parties to participate in conferences

telephonically, the depositions of Wright's witnesses took place in Alabama, and the other

depositions have taken place where the witnesses reside.  Notably, notwithstanding Wright's

burden argument, his counsel chose to travel to other locales for depositions at which he did not

ask any questions, even though most other counsel participated by phone.

---

[10] The sole case Plaintiff cites in support of its request for sanctions is inapposite.  In Longcrier v. HL-A Co., 595 F. Supp. 2d 1218, 1227-28 (S.D. Ala. 2008), the defendants had procured hundreds of declarations from putative class members under the guise of "conducting a survey" when in fact it was marshaling evidence to use against its employees.  The court found that the defendant's conduct rose to the level of "bad faith" such that it "disrupt[ed] the litigation" and struck the ill-gotten declarations.  Id. at 1229-30.  Here, Pilot properly disclosed relevant information regarding its sub-members and Plaintiff's conclusory allegations to the contrary are nothing more than a speculative rant.

[11] Plaintiff contends erroneously (Mot. at 2, n.4) that Mr. Haslam "failed to appear in contravention of the [MDL] Court's order" at a settlement conference held in Kentucky on May 29, 2015.  But the Magistrate Judge who set the settlement conference stated only that the "Parties are ordered to have their respective client *and/or representative*, fully authorized to negotiate and approve a settlement, present in person at conference." [MDL 2515, Dkt. 213 (emphasis added)] Mr. Haslam was represented in person by his counsel, Stephen D. Brody, who had full authority to negotiate and approve a settlement on Mr. Haslam's behalf.

Americas 90804539

## <u>CONCLUSION</u>

For the reasons set forth above, Pilot respectfully requests that the Court deny the Motions and issue such other relief as the Court deems just and proper.


Dated:  October 6, 2015                              Respectfully submitted,


By:___/s/ *M. Christian King*_____
    M. Christian King (KINGM4874)
    cking@lightfootlaw.com
    LIGHTFOOT, FRANKLIN & WHITE L.L.C.
    400 20th Street North
    Birmingham, AL  35203
    (205) 581-0700
    (205) 380-9115 (Facsimile)

    /s/ *Gregory M. Starner*_____
    Glenn M. Kurtz (*pro hac vice forthcoming*)
    Gregory M. Starner (*pro hac vice*)
    Joshua D. Weedman (*pro hac vice*)
    WHITE & CASE LLP
    1155 Avenue of the Americas
    New York, NY 10036
    Phone: 212.819.8200
    Fax: 212.354.8113
    gstarner@whitecase.com
    jweedman@whitecase.com

    *Counsel for Defendants Pilot Corporation and*
    *Pilot Travel Centers LLC*

    /s/ *Stephen D. Brody*_____
    Stephen D. Brody
    O'MELVENY & MYERS LLP
    1625 Eye Street N.W.
    Washington, DC 20006
    (202) 383-5167 (Tel)
    sbrody@omm.com

    /s/ *W. Joseph McCorkle, Jr.*___
    W. Joseph McCorkle, Jr.
    BALCH & BINGHAM LLP
    105 Tallapoosa Street, Suite 200
    Montgomery, AL 36104-2549
    t: (334) 269-3134

14

f: (866) 783-2741
jmccorkle@balch.com

*Counsel for Defendant James A. Haslam III*

/s/ *Martin G. Durkin, Jr.*
Martin G. Durkin, Jr.
HOLLAND & KNIGHT LLP
131 S. Dearborn St., 30th Floor
Chicago, IL 60603
(312) 263-3600 (Tel)
(312) 578-6666 (Fax)
Martin.durkin@hklaw.com

*Counsel for Defendant John Freeman*

/s/ *Michael P. O'Day*
Michael P. O'Day
DLA PIPER LLP
The Marbury Building
6225 Smith Avenue
Baltimore, MD 21209
(410) 580-2493 (Tel)
(410) 580-3293 (Fax)
Michael.oday@dlapiper.com

*Counsel for Defendant Brian Mosher*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed electronically on October 6, 2015.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/    *Gregory M. Starner*
Gregory M. Starner

16